**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| VINCENT MAURICE HARRIS | CIVIL ACTION NO. 08-737 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LSU HEALTH SCIENCE CENTER SHREVEPORT | MAGISTRATE JUDGE HORNSBY |

## <u>MEMORANDUM RULING</u>

Before this Court is a Motion for Summary Judgment [Record Document 33], filed on behalf of Defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (hereinafter referred to as "LSUHSC-S"). LSUHSC-S seeks summary judgment on the grounds that Harris has not exhausted his administrative remedies as to all of his claims and that, even if his administrative remedies were exhausted, Plaintiff cannot establish his claims of sex discrimination, hostile work environment, constructive discharge, or retaliation. LSUHSC-S also filed a Motion to Strike Exhibits Filed by Plaintiff in Opposition to Defendant's Motion for Summary Judgment [Record Document 38]. LSUHSC-S contends the exhibits attached to Plaintiff's Opposition to the Motion for Summary Judgment constitute inadmissible hearsay under the Federal Rules of Evidence 801, *et seq.*, and that the documents were not properly identified or authenticated in accordance with Federal Rules of Evidence 901, *et seq.*  For the reasons stated herein, Defendant's Motion to Strike [Record Document 38] is **DENIED as moot**, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

**FACTUAL BACKGROUND**

Plaintiff Vincent Harris ("Harris") was employed as an Administrative Coordinator 2 in the Central Medical Supply Department at LSU Health Sciences Center-Shreveport ("LSUHSC-S") from August 1, 2005 until his resignation on December 17, 2007.  Harris was initially hired to work the 2:30 p.m. to 11:00 p.m. shift.  On June 20, 2006, he was moved to the 6:30 a.m. to 3:00 p.m. shift as a result of incidents in the department involving failure to follow proper procedures for call-ins, improper conduct during a meeting with his supervisor, and being argumentative with the team manager.  [SOF ¶ 22; Thompson Affidavit, ¶ 5].

During his employment with LSUHSC-S, Harris received two annual reviews pursuant to the "State Employees Performance Planning and Review (PPR) Form."  On the first review, he received a "Meets Requirements" rating and on the second review he received an "Exceeds Requirements" rating.  On both occasions, he received a merit increase.  [SOF ¶ 5; Fuqua Affidavit, Ex. 1].

LSUHSC-S has a four-step grievance procedure through which employees can make complaints to the appropriate personnel.   In the first step, the employee presents his immediate supervisor with a written grievance within five days of the incident which caused the employee to be aggrieved.  Within three working days of receipt of the grievance, the supervisor must establish a meeting with the employee to discuss the grievance and/or render a written answer to the grievance.  Second, if the employee is not satisfied with the decision of the immediate supervisor, within three working days, the employee may submit his grievance in writing to the Department of Human Resource Management. The designated representative of the Department of Human Resource

Management will conduct an investigation within five working days.  If the representative believes the employee has a valid grievance, he will notify the department head of his findings.  If the representative does not believe the grievance is justified, a written decision is rendered to the employee and the department head within three working days after the initial response was rendered.   Third, if the employee is not satisfied with the representative's decision, within two working days after receipt of the decision, he may submit his grievance in writing to the appropriate Dean.  The Dean, or his designee, will discuss the grievance with the employee within five days and render a written decision within three working days after the grievance is discussed with the employee.  Lastly, if the employee remains unsatisfied, within two working days of receiving the Dean's written decision, he may submit his grievance in writing to the Chancellor for decision.  The Chancellor, or his designee, will meet with the employee within four working days of receipt of the written grievance and render a written decision within five days thereafter.  Decisions rendered by the Chancellor are final.  [Fuqua Affidavit, Ex. 2].

On November 22, 2006, Harris attempted to receive his pay stub[1] from Dianna Bolden, the supervisor of the shift preceding his.  Harris received his pay stub 15-30 minutes later from an employee, Margaret Scott Walker, who was not a supervisor and, therefore, not authorized to deliver the pay stub to him.[2]  Following this incident, Harris filed a grievance with his immediate supervisor, Karen Flipping.  He alleged this type of incident

---

[1]Harris had direct deposit of his paychecks.  The "checks" and/or "pay stubs" that he refers to were actually the receipts for his direct deposits but were not negotiable instruments.

[2]The pay stub was delivered to him in a sealed envelope which had not been opened.

had previously occurred in the fall of 2006 and that he was discriminated against on the basis of sex when the two female employees were allowed to distribute his check stubs to him.  He also claimed that he was denied opportunities to work overtime and that he was denied a promotion to Administrative Coordinator 3.  The grievance was not timely processed and Harris submitted another grievance on January 23, 2007.  He then proceeded through each of the four steps of the grievance procedure and was denied relief at each step.  [SOF ¶ 7; Fuqua ¶ 6].

On February 12, 2007, Harris filed a Charge of Discrimination with the EEOC. [Fuqua Affidavit, Ex. 9].  The "PARTICULARS" section of Harris's Charge of Discrimination provides:

> I.  I was hired August 1, 2005.  I am currently Administrative Coordinator 2.  Karen Flipping is my immediate supervisor. She is female.  I am the only male on my shift (6:30 a.m.).
>
> II.  On 11/23/06, Diane Bolden, female, supervisor, withheld my check stubs from me.  She issued my check stubs to two different female co-workers.
>
> III.  I believe I have been discriminated against because of my sex, male, in violation of Title VII of the Civil Rights Act of 1964, as amended.
>
> IV.  I've filed grievances only to be met with retaliation.  First, I received no response as retaliation.  1/25/07, I was granted a hearing and received a warning letter as another means of retaliation (2/9/07) (Grievances 11/28/06, 1/23/07, 2/2/07).
>
> V.  Since September 2006, Female co-workers with less than six months have been authorized overtime pay in preference to me.

[Fuqua Affidavit, Ex. 9].  In addition, under the heading "DISCRIMINATION BASED ON," Harris checked only the box labeled "Sex."  Id.  The EEOC issued a "Dismissal and Notice of Rights" letter to Harris on March 19, 2008.

On June 6, 2007, David Fuqua, Director of Human Resource Management, sent a letter to Harris advising him that LSUHSC-S was contemplating taking disciplinary action against him as a result of excessive tardiness and absences.  [SOF ¶ 8; Fuqua Affidavit, ¶ 7].  Prior to this letter, Harris received three written warnings about his tardiness and absences from his immediate supervisor, Karen Flipping.[3]  [Thompson Affidavit, Ex. 2]. Harris responded to Fuqua in a letter dated June 7, 2007 in which he stated, "The tardiness and absence allegations are true."  He then alleged that he had endured a great deal of stress during the grievance process, "[h]ostility in the workplace due to fraternization," "[p]referential treatment of select female coworkers in job assignments," and "[e]ncouragement of odd gender isolation."  [Fuqua Affidavit, Ex. 5].  Following an investigation, Fuqua advised Harris that he was suspended without pay for five days as a result of his excessive tardiness and absences.  [Fuqua Affidavit, Ex. 6].  Harris had been tardy on twenty-one occasions and absent on five occasions.  Id.

On May 25, 2007, Harris requested an investigation of alleged sexual harassment by a co-employee, Margaret Scott Walker.  [SOF ¶ 16; Fuqua Affidavit, ¶ 15].  He accused Walker of dancing, gyrating, and making inappropriate comments towards him.  Fuqua investigated the claim and denied Harris' allegations after finding "no evidence that sexual harassment took place."  [Fuqua Affidavit, Ex. 11].

---

[3]Harris received these written warnings on February 7, 2007, March 28, 2007, and April 19, 2007.  [Thompson Affidavit, Ex. 2].

On the morning of December 17, 2007, Thomas Thompson, Director of Central Medical Supply, found Harris to be "irrationally irritated," behavior which was inconsistent with his normal demeanor.  [Thompson Affidavit, ¶ 21].  Thompson requested Harris undergo a drug screen.  Harris initially consented, but as the Health Clinic nurses began to give instructions regarding the drug screen, Harris stood up, announced "I quit," and walked out. Id. at ¶ 22.  Thompson drafted a letter accepting Harris's voluntary resignation from LSUHSC-S, effective December 17, 2007.  [Thompson Affidavit , Ex. 3].

On May 22, 2008, Harris filed a Complaint in the Western District of Louisiana against LSUHSC-S alleging that he had been discriminated against on the basis of sex when his pay stubs were issued by two different female co-workers; that LSUHSC-S retaliated against him for filing grievances by not responding to the grievance in a timely manner; that female co-workers had been authorized overtime in preference to him; and that his five-day suspension was discriminatory because two female co-workers that had excessive tardiness and absences received less punishment that he.  In addition, Harris asserted claims of hostile work environment and retaliation.  See Second Amended Complaint.  LSUHSC-S seeks summary judgment on these claims on the ground that Harris has not exhausted his administrative remedies as to all of his claims and that Harris cannot establish a prima facie case of sex discrimination, hostile work environment, constructive discharge, or retaliation.  [Doc. 35].

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). A fact is "material" if it can "affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). Facts that are irrelevant or unnecessary for determination of the suit should not be considered. Id. at 248-49, 106 S.Ct. 2510. A dispute over a material fact is "genuine" if the evidence is such that it could be resolved in favor of either party. Id.

If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. Little, 37 F.3d at 1075. If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While all factual controversies must be resolved in favor of the nonmovant, Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005), the nonmovant's burden will not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047.

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be

tried."  All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule."  Local Rule 56.2.

Because employment discrimination claims "involve nebulous questions of motivation and intent," summary judgment is generally an inappropriate tool for resolving these cases. Thornbrough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 640-41 (5th Cir.1985) (citations omitted). However, if Plaintiff fails to establish a prima facie case, Bauer v. Albermarle Corp., 169 F.3d 962, 966 (5th Cir.1999), or if defendant presents strong evidence of a legitimate, nondiscriminatory reason for its actions and the plaintiff is unable to counter with additional evidence of pretext, summary judgment may be properly granted. Enplanar, Inc. v. Marsh, 11 F.3d 1284, 1295 (5th Cir.1994).  With these principles in mind, we now turn to a review of the claims at issue.

### LAW AND ANALYSIS

**1.    Motion to Strike**

In support of his opposition to LSUHSC-S's motion for summary judgment, Harris submitted the following exhibits: (1) Exhibit 1: Central Medical Supply Employees 8/01/2005 - 3/31/2009; (2) Exhibit B: Anxiety Diagnosis October 12, 2006, Excused Absence December 6, 2006, Documentation of Clinic Attendance, Doctor Visits/Medications Prescribed; (3) Exhibit D1: Allegations of Sexual Harassment May 25, 2006 - May 30, 2007; Exhibit D2: Defendant's Advisement Letter, June 6, 2007; Exhibit D3: Plaintiff's Response to Advisement Letter, June 7, 2007; Exhibit D4: Plaintiff's 5-day Suspension Letter, June 13, 2007; Exhibit D5: Plaintiff's Letter Delivered to Dr. Clay's

Office, Vice Chancellor for Clinical Affairs; (4) Exhibit P-3: Transcript of the Third Step Grievance Hearing for Vincent Harris on February 28, 2007; (5) Exhibit P-10: Police Incident Reports from 7/21/2008, 12/30/2007, and 12/17/2007; (6) Exhibit X: Documentation Forwarded by Plaintiff to the EEOC and/or Received by Plaintiff from the EEOC; (7) Exhibit 18: David Fuqua's Letter, May 30, 2007; (8) Exhibit 22: EEOC Log, Sex Discrimination Claims, 8/01/2005 - 3/31/2009; and (9) Exhibit 23: EEOC Log, Retaliation/Reprisal Claims, 8/01/2005 - 3/31/2009. [Doc. 37]. LSUHSC-S contends these exhibits should be stricken from the record and should not be considered by this Court because the exhibits constitute inadmissible hearsay under the Federal Rules of Evidence 801, *et seq.*, and that the documents were not properly identified or authenticated in accordance with Federal Rules of Evidence 901, *et seq.* [Doc. 38].

As an initial matter, the Court recognizes that the documents identified as Exhibits D2-D4 and Exhibit 18 were submitted by LSUHSC-S in support of its motion for summary judgment with no objection from Harris. See Fuqua Affidavit, Exs. 4, 5, 6, 11. Thus, the Court may consider these documents when ruling on the motion for summary judgment.

With respect to the remaining exhibits, it is well-settled that a plaintiff must respond to an adequate motion for summary judgment with admissible evidence. Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 191 (5th Cir. 1991), citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 n.19, 90 S.Ct. 1598, 1609 n.19, 26 L.Ed.2d 142 (1970). If the party opposing summary judgment has evidence which has not yet been reduced to admissible form but is germane to the existence of a genuine issue of material fact, the Court may permit the party opposing summary judgment to obtain the affidavits or other documentation necessary. Id., citing Fed. R. Civ. P. 56(f).

In the instant matter, Harris submitted his own affidavit in support of his opposition to summary judgment and attached the exhibits therewith.  [Doc. 44].  However, the Court finds it unnecessary to determine whether his affidavit and the exhibits listed above are in admissible form pursuant to Federal Rules of Evidence 801, *et seq.*, and 901, *et seq.*  For the reasons discussed below, even when considering the affidavit and exhibits submitted by him, Harris cannot establish a genuine issue of material fact as to any of the claims he has alleged in this lawsuit.  Accordingly, because Exhibits 1, B, D1, D5, P-3, P-10, X, 18, 22, and 23 are not germane to the existence of a genuine issue of material fact, defendant's motion to strike exhibits is moot.  See e.g., Farm Credit Bank of Texas v. Fireman's Fund Ins. Co., 822 F.Supp. 1251, 1255 (W.D.La. 1993) (finding that motion to strike exhibits for lack of proper authentication was moot where plaintiff failed to present a genuine issue as to prescription).

**2.     Motion for Summary Judgment**

      **A.     Exhaustion of Administrative Remedies**

Employment discrimination plaintiffs must exhaust administrative remedies before they may seek judicial relief.  McCain v. Lufkin Ind., Inc., 519 F.3d 264, 273 (5th Cir. 2008).  In order to exhaust his or her administrative remedies, a plaintiff must first file a timely charge with the EEOC.  "The charge enables the EEOC to investigate and, if appropriate, negotiate a resolution with an employer."  Id.  Only after administrative efforts terminate and the EEOC issues a statutory notice of right to sue may the employee sue the employer in federal court.  Id.

The scope of the exhaustion requirement "has been defined in light of two competing Title VII policies." Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006). On one hand, the scope of an EEOC charge should be liberally construed "because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se." Id. On the other hand, the "primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." Id. Accordingly, keeping both considerations in mind, "this court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970)) (internal quotation marks omitted). In doing so, the Court must engage in a "fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." Id.

Harris asserts claims of  denial of promotion and retaliation in this lawsuit, but LSUHSC-S contends he should be barred from proceeding with those claims because the Charge of Discrimination he submitted to the EEOC did not include any allegations regarding a denial of promotion and, although he made a vague reference to retaliation, he did not "check the box" for retaliation on the form.  See Fuqua Affidavit, Ex. 9.

The Court finds that the investigation which could reasonably be expected to grow out of the plain language of Plaintiff's Charge of Discrimination, quoted above, would include an investigation of a claim of retaliation.  Harris expressly stated that his actions

in the grievance process were met with "retaliation" and identifies the delay in the grievance procedure and the warning letters as the retaliatory actions. <u>Id.</u> Under such circumstances, the failure to "check the box" for retaliation does not preclude an investigation of such a claim. However, in the absence of any reference to a denial of promotion in the Charge of Discrimination, an investigation of such a claim could not reasonably be expected. <u>See id.</u> Accordingly, Harris failed to exhaust his administrative remedies with respect to his claim of denial of promotion.

The Court also believes that an investigation of a claim of hostile work environment could not reasonably be expected to grow out of the plain language of the Charge of Discrimination. Nevertheless, because LSUHSC-S has not raised this argument and recognizing that Harris is proceeding *pro se*, in an abundance of caution the Court will analyze the merits of Harris's claims of sex discrimination, hostile work environment, and retaliation.[4]

### B.   Sex Discrimination

Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. <u>See</u> 42 U.S.C. § 2000e-2(a). When there is no direct evidence of discrimination, as in this case, a plaintiff's claims are evaluated using the evidentiary framework set forth by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817 (1973). Under the <u>McDonnell Douglas</u> framework, in order to survive a motion for summary judgment, the plaintiff must

---

[4]Although LSUHSC-S discusses a "constructive discharge" claim in its Motion for Summary Judgment, Harris does not allege a claim of constructive discharge in his complaint and such a claim is not properly before this Court. <u>See</u> Second Amended Complaint.

first establish a *prima facie* case of discrimination by a preponderance of the evidence.  Id. at 802, 93 S.Ct. at 1824.  Once established, the *prima facie* case raises a presumption of discrimination, which the defendant must rebut by articulating a legitimate, nondiscriminatory reason for its actions.  Meinecke v. H&R Block, 66 F.3d 77, 83 (5th Cir. 1995).  If the defendant satisfies this burden, the plaintiff must prove the proffered reasons are pretextual.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093 (1981).

To establish a *prima facie* case of sex discrimination, the plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably.  Willis v. Coca Cola Enterprises, Inc., 445 F.3d 413, 420 (5th Cir. 2006); Rutherford v. Harris Co., Tex., 197 F.3d 173, 184 (5th Cir. 1999).

LSUHSC-S asserts summary judgment should be granted in its favor because Harris cannot establish that others similarly situated were treated more favorably.  [Doc. 35, p.21].  With respect to his five-day suspension for excessive tardiness and absences, Harris alleges Le'Jean Jones and Ann Banks, females employed in the position of Administrative Coordinator 2, were "similarly situated" but treated more favorably.  However, Le'Jean Jones attendance violations were not as numerous and she arguably received a harsher discipline than Harris.  She was only absent on three occasions (two less than Harris) and tardy on eleven occasions (ten less than Harris).  Furthermore, Jones was suspended without pay for three days and, unlike Harris, was denied a merit increase.  [Fuqua Affidavit, Ex. 7; Ebarb Affidavit, Ex. 3].  Likewise, Ann Banks was only tardy on seven occasions (fourteen less than Harris).  She was denied a merit increase and was

ultimately terminated from her employment.  [Fuqua Affidavit, Ex. 8; Ebarb Affidavit, Ex. 4].

Harris also claims female employees of the Central Medical Supply department were treated move favorably because they were authorized overtime in preference to him. But it is the practice of the Central Medical Supply Department "to allow current shift employees to continue to provide work coverage and not call in an employee who is not currently working a shift to come in and work overtime." [Thompson Affidavit, ¶ 2].  In this case, Harris complains only of not being called in to provide work coverage; he cannot identify any female employees who worked the same shift as he that were allowed to work overtime.   Consequently, plaintiff has failed to demonstrate that there were female employees who were "similarly situated" to him that were treated more favorably.

With respect to Plaintiff's claim regarding the handing out of pay stubs by unauthorized female employees, there is no evidence in the record demonstrating a correlation between the handing out of pay stubs and sex discrimination, nor can the Court even speculate as to how a correlation might exist under the facts of this case. Accordingly, the Court finds Harris has failed to establish a *prima facie* case of discrimination based on sex.

### C.    Hostile Work Environment

To prevail on a Title VII hostile work environment claim based on sex, the plaintiff must show that he (1) belongs to a protected group, (2) was subjected to unwelcome harassment, (3) the harassment complained of was based on sex, (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt

remedial action.  See Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).  Harris complains that the delay in the grievance process and denial of overtime created a hostile work environment.  [Doc. 37, pp. 18-19].  But there is no evidence in the record that Harris was subjected to "unwelcome harassment."  LSUHSC-S admits there was a delay in the process when Harris initially filed his grievance.  However, LSUHSC-S made numerous apologies to Harris for the delay, the employees responsible for the delay were admonished, and plans were made so that only authorized personnel would deliver pay stubs in the future.  [Thompson Affidavit, ¶¶ 9-12].  Thompson also advised Harris to take up matters with his immediate supervisor if he felt he was being "victimized" or negatively affected by "preferential treatment" or to go to the Assistant Director or Director of the Department if he needed further intervention.  [Thompson Affidavit, ¶ 12].  Furthermore, as previously set forth, there is no evidence that female employees were authorized overtime in preference to him.  These allegations are simply insufficient to show that Harris was subjected to "unwelcome harassment."

Harris also claims that he was subjected to sexual harassment when Margaret Walker danced "lewdly and [was] gyrating her body in such a manner to bring attention to her private body parts," and that she directed sexist remarks to him.  [Second Amended Complaint, ¶ 7(j)].  Assuming arguendo this conduct constitutes "unwelcome harassment" based on a protected ground, there is no evidence that this conduct affected a term, condition, or privilege of his employment.  "For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

Ramsey, 286 F.3d at 268 (internal quotations and citations omitted).  Whether a work environment is "hostile" or "abusive" is determined by looking at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.  Shepard v. Comptroller of Public Accounts, 168 F.3d 871, 874 (5th Cir. 1999), citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

In this matter, the alleged "harassment" by Ms. Walker was an isolated incident that was neither severe nor pervasive.  See e.g., Paul v. Northrop Grumman Ship Sys., 309 Fed.Appx. 825 (5th Cir. 2009) (holding plaintiff's allegations that a male co-worker walked up to her until his chest was touching her, stared at her in a hostile and intimidating manner, and rubbed his pelvic region across her hips when he squeezed past her were not actionable under Title VII);  Gibson v. Potter, 264 Fed.Appx. 397 (5th Cir. 2008) (holding that the conduct of a supervisor who "grabbed [the plaintiff] on the buttocks and made suggestive comments" while she conversed with another employee was not sufficiently severe or pervasive to alter a term or condition of employment); Hockman v. Westward Communications, LLC, 407 F.3d 317 (5th Cir. 2004) (holding that an isolated remark about a co-workers body, slapping plaintiff on the behind with a newspaper, "grabbing" or "brushing" against plaintiff's breasts and behind, and attempted kiss "was not so severe and pervasive to affect the terms, conditions, or privileges" of employment); Derouen v. Car quest Auto Parts, 275 F.3d 42 (5th Cir. 2001) (holding plaintiff's allegations that a co-worker attempted to grab her breast, later put his hand on and rubbed her thigh, and that a customer twice made sexually threatening remarks did not "rise to the level necessary,

as a matter of law, to support a hostile work environment claim").  Because Harris cannot show that the alleged harassment affected a term, condition, or privilege of his employment, his claim fails as a matter of law.

### D.    Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must prove (1) he engaged in a protected activity, (2) he suffered an adverse employment decision, and (3) a causal connection between the protected act and the adverse action.  Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008).  Ultimately, the plaintiff must show that "but for" the protected activity, the adverse employment action would not have occurred.  Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 806 (5th Cir. 2007), citing Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005).  An "adverse employment action" consists of those ultimate employment decisions such as hiring, firing, granting leave, promoting, demoting, and compensating.  Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004).

Harris has not suffered from an adverse employment action actionable under Title VII.  First, with respect to the initial failure of his supervisor to respond to the grievance, the evidence demonstrates that Karen Flipping did not believe Harris' complaint was a grievance.  [Thompson Affidavit, ¶ 9].  When Thompson learned of his complaint, immediate action was take to process the grievance.  Id.  Most importantly, Harris did not suffer an "adverse employment action" as a result of the delay.

Second, with respect to the discipline he received regarding his tardiness/absences, the first warning occurred on February 7, 2007, nearly three months after he initiated the grievance process and prior to the time he filed a Charge of Discrimination with the EEOC.

Moreover, as Harris admitted he was excessively tardy and/or absent [Fuqua Affidavit, Ex. 5], the written warnings and five-day suspension issued to Harris cannot be considered retaliatory, but merely actions taken to stop a recurring problem. In other words, Harris cannot establish that he would not have been disciplined "but for" his protected activity. Accordingly, the Court finds Harris has failed to establish a *prima facie* case of retaliation.

## CONCLUSION

The Court finds Plaintiff Vincent M. Harris failed to exhaust his administrative remedies as to his denial of promotion claim and cannot establish a *prima facie* case of sex discrimination, hostile work environment, or retaliation under Title VII.  In the absence of any issues of material fact remaining in this case, the Defendant's motion for summary judgment shall be **GRANTED** and the Plaintiff's claims **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 20th day of October, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE